### BERDOLL v. BERDOLL.
No. 8971.

Court of Civil Appeals of Texas. Austin.
Nov. 6, 1940.

Rehearing Denied Nov. 27, 1940.

Yelderman & Yelderman, of Austin, for plaintiff in error.

Alfred Petsch, of Fredericksburg, and Hart & Brown, of Austin, for defendant in error.

BLAIR, Justice.

The parties will be designated appellant and appellee.

Appellee, Annie R. Berdoll, sued appellant, A. J. Berdoll, for a divorce and to adjudicate the respective property rights of the parties. Appellee alleged that she owned as her separate property a certain described residence in Austin, and also 117.7 acres of land described, which property she inherited from her father after her marriage to appellant. He answered that these properties were conveyed to himself and appellee jointly, upon an agreement between them that the conveyance should be so made as compensation to him for outlays, expenses, and losses incurred by him out of his separate means in improving other separate property of appellee. She replied that no such agreement was ever made; that she did not authorize the conveyance to her and her husband; that she did not know that the conveyance had been so made until December 3, 1938, which was after this suit was instituted; and prayed that title and possession of the properties be awarded to her as her separate property. The jury found that no such agreement as alleged by appellant was made; and judgment was accordingly rendered awarding the properties to appellee as her separate properties.

For the first time appellant contends on this appeal that the right of appellee to have the conveyance to him set aside and cancelled was barred by the four-year statute of limitation (Article 5529). Not having plead limitation against the cause of action of appellee pertaining to the two pieces of property, appellant waived limitation as a defense, and cannot now be heard to urge same. The law is too well settled to admit of any discussion that "limitation is not available unless it is specifically set forth as a defense, it being firmly settled that the defense is waived if it is not interposed by a demurrer or plea." 28 Tex.Jur. 286–288, and cases there cited.

Shortly before appellant and appellee were married he obtained two life insurance policies, which provided that payment of twenty annual premiums would mature them; and each provided for a cash surrender value. Appellant paid the first premiums due on these policies, and after his marriage appellee was named beneficiary, and after his marriage eighteen more annual premiums were paid, fourteen of which were paid out of the community funds of appellant and appellee; and at the time of the trial these policies had a total cash surrender value of $2,754. Appellee made the insurance company a party to this suit, alleging that under the facts stated she was entitled to receive one-half of fourteen-nineteenths of the cash surrender value of these policies, being $1,013.40, upon the theory that since one-half of fourteen-nineteenths of the annual premiums was paid out of her one-half interest in the community funds, equity and justice required that she should receive at

that time one-half of the fourteen-nineteenths of the cash surrender value of the insurance policies. Accordingly, the trial court, after reciting the facts, decreed as follows:

"* * * that plaintiff Annie R. Berdoll owns, as her part of the present cash surrender value of said two policies, fourteen-nineteenths of one-half thereof, or the sum of $1,013.40 of said cash surrender value; that she is entitled to have one of said policies surrendered at this time and to receive, as her separate property, $1,013.40 of the amount paid by said insurance company upon the surrender of such policy; and the court now orders, adjudges, and decrees that said Policy No. 4297-J be surrendered by plaintiff and defendant to said Great Southern Life Insurance Company, and that said insurance company pay to plaintiff Annie R. Berdoll the sum of $1,013.40 and to defendant A. J. Berdoll the balance of the cash surrender value of said policy, and that such surrender of said policy to said insurance company and the payment by said insurance company of said sum of $1,377.00 as the cash surrender value thereof shall cancel and terminate said policy, and that thereafter the same shall not be of any further force and effect, and said Great Southern Life Insurance Company shall not be liable thereon in any further sum in any event; and the court does hereby adjudge and decree to said Annie R. Berdoll, as her separate property, the sum of $1,013.40 of the cash surrender value of said two policies, and adjudges that she may demand and receive same and may execute and deliver all necessary and proper receipts and acquittances therefor, and that she may sell, transfer and assign the same, and that process appropriate to carry into effect this provision of this judgment shall issue herein upon demand of said plaintiff Annie R. Berdoll.

"The court further adjudges and decrees that defendant, A. J. Berdoll, may purchase, and become the owner of, the said interest of $1,013.40 in the cash surrender value of said insurance policies from said plaintiff Annie R. Berdoll, provided he pays said sum in cash to said plaintiff Annie R. Berdoll on or before the 15th day of May, 1939, and, that in event said defendant A. J. Berdoll does pay said sum of $1,013.40 to plaintiff Annie R. Berdoll on or before said 15th day of May, 1939, that such payment shall be in full and complete satisfaction of the interest in the cash surrender value of said two policies of insurance which is herein adjudged and given to said plaintiff Annie R. Berdoll; and that upon such payment being made to plaintiff Annie R. Berdoll, she shall execute proper receipt therefor and transfer, assign, and release all of her interest of every kind in and to each of said two policies of insurance."

The sole objection of appellant to this judgment is that "it was error * * * to impress a lien on behalf of the divorced spouse for any portions of the cash surrender value of the policies of insurance." He contends that this question has been conclusively decided in his favor by the case of Whiteselle v. Northwestern Mutual Life Ins. Co., Tex.Com.App., 221 S.W. 575. We do not regard this case as being in point, because the issue there decided was between the insurance company and the wife after the death of the divorced husband. The divorced wife contended that she was a one-half owner of the policy purchased with community funds by her husband on his life and payable to her as beneficiary. After the divorce the ex-husband changed the beneficiary and obtained a loan on the loan value of the policy, and after the death of the ex-husband the wife sued the insurance company for conversion of one-half the value of the policy, and the court denied her the right to interfere with the loan contract made by the insured with the company holding that she had no interest in the policy after her divorce; and that no issue had been made as to premiums paid with community funds between the husband and wife at the time the divorce was granted and their property rights adjudicated. Nor did the case hold that a wife upon obtaining a divorce did not have an interest in the cash surrender value of a life insurance policy purchased by the husband during their marriage with community funds. Such a right in the wife has been recognized by the courts in several cases.

In the early case of Hatch v. Hatch, 35 Tex.Civ.App. 373, 80 S.W. 411, 413, where a policy of insurance had been assigned to the divorced wife during the marriage, and where after divorce she continued to pay the premiums, the court held that because of public policy she had no insurable interest and was not entitled to hold the policy, "except to the extent of premiums paid by her," and allowed her a lien as accruing by virtue of her having paid the premiums on the policy.

In Shoemaker v. American Nat. Ins. Co., Tex.Com.App., 48 S.W.2d 612, it was held

that the cash surrender value of a life insurance policy on the ex-husband's life constituted a community chose in action or debt against the insurer which the insured may assign, and that a property settlement contract made in contemplation of divorce whereby the wife was given or assigned the cash surrender value of the policy was valid, and that although the wife by divorce lost her insurable interest in the policy, her executor could under the property settlement contract and assignment recover the cash surrender value of the policy against the insurance company.

In Kirberg v. Worrell, Tex.Com.App., 44 S.W.2d 940, the trial court and the Court of Civil Appeals, Kirberg v. Missouri State Life Ins. Co., 30 S.W.2d 663, held that a divorced wife had no insurable interest after divorce, and could not recover one-half of the cash surrender value of a policy on the ex-husband's life paid for with community funds during marriage; but the Commission of Appeals by an opinion expressly approved by the Supreme Court held that the divorced wife could recover against the ex-husband one-half of the premiums on one policy and one-half of the cash surrender value of another policy paid for with community funds, and reversed and remanded the cause for trial of the issue, the court holding that a wide discretion was vested in the trial court by statute (Art. 4638) as respects the partition of community properties between divorced parties.

▇▇▇▇▇ Whether the trial court's judgment awarded a lien upon the cash surrender value of the insurance policy, or merely decreed that as between the divorced parties the insurance company should now pay the cash surrender value of the policy to the divorced parties in accordance with their respective interests therein and in accordance with the terms of the policy to pay a cash surrender value, is not material. In either event the court had the wide statutory discretion or power to do justice between the divorced parties and to partition or divide this community chose of action or debt of the insurance company, which had been paid for in part with community funds during the marriage. Manifestly, if the law can on the ground of public policy destroy the insurable interest of the divorced wife in the insurance policy paid for with community funds, it can likewise under the rule of justice and equity require the husband to surrender the policy and adjust or divide its cash surrender value with the divorced wife.

The wife as beneficiary had an interest in the insurance policy and its surrender value during marriage, and under its terms the husband could not name another beneficiary without her consent. But the divorce destroyed the wife's insurable interest in the policy, and after the divorce and the death of the husband the insurance must be paid to his estate or another beneficiary named by him; and unless the court had the power to require the husband to pay the divorced wife her interest in the cash surrender value, or to require the insurance company to pay the surrender value of the policy, the wife might lose her interest in this community chose in action or debt. No complaint is made that the payment of the wife's interest in this community chose in action or debt would work a hardship upon the divorced husband, nor that same could have been more equitably paid out of other properties of the parties. If the insurance policy was more valuable to the husband than the wife's interest in the cash surrender value of the policy, he was fully protected by the judgment, which gave him a period of grace in which to pay the divorced wife for her interest, and thereby continue the insurance in force; or he was given the right to accept his present interest in the cash surrender value of the policy. Likewise, the judgment protected appellant on one of the policies by requiring that only one of them be surrendered, it being sufficient to pay the cash surrender value due appellee on both policies. Thus the judgment protects appellant, and does not give appellee any interest in the shortening of the life of appellant, but merely awards to each divorced spouse the present earned money value of the two insurance policies, which became a community chose in action or debt because paid for or contributed to by the use of community funds.

The Texas decisions do not leave the question presented entirely clear, but none of them holds contrary to our above views as applied to the particular facts of the instant case. A recent review of the decisions bearing on the question was made by Mr. W. C. Huie in No. 2 of Vol. XVII of the Texas Law Review, and upon such review he suggests that the rule should be as follows: "If the husband, for example, has secured during the marriage a policy on his own life in favor of his estate, and has paid the premiums out of the community funds, under established principles, the right to receive the proceeds which will become payable at his

death is a community chose in action. After a divorce of the parties, were it not for the rule of public policy, the divorced wife could wait until the death of the insured, and then receive from the insurer her one-half of the proceeds. To permit her to retain this right, however, would make the early death of the insured an advantage to her. Texas public policy demands, therefore, that she be deprived of the right to await the death of the insured. But it does not follow that she must be deprived of this right without any compensation. Clearly, she may be compensated for the loss of her interest in the community chose in action without violating the rule of public policy, so long as she is given no motive for murdering the insured."

We think the suggested rule should be applied to the instant case.

The judgment of the trial court is affirmed.

Affirmed.