FRANCES P. BOLTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 107438, 107439.   Promulgated March 5, 1943.

*James R. Garfield, Esq.*, and *Fred C. Baldwin, Esq.*, for petitioner.
*W. W. Kerr, Esq.*, for respondent.

720

722

OPINION.

HILL, *Judge:* The first issue is whether or not petitioner made a deductible gift in each of the taxable years. Respondent contends that the gifts were to an individual and therefore taxable under section 501 of the Revenue Act of 1932. He concedes, however, that the purposes of the work were educational, and thus the issue is limited to whether or not the gifts were "to or for the use of * * * trust, or * * * fund." Sec. 505 (a) (2) (B), Revenue Act of 1932, as amended by sec. 517, Revenue Act of 1934.

Petitioner contends that the gifts were to a fund or trust and therefore deductible under section 505 (a) (2) (B).

The facts show that petitioner became interested in the work which Wilfred was doing with light. She asked him to submit a budget to her. This budget included the personal living expenses of Wilfred as well as the contemplated expense of furthering "Lumia." Peti-

tioner agreed to advance $1,000 a month. She deposited the money in a bank under the name of "Light Fund." She made arrangements for Wilfred to withdraw $1,000 a month from this "fund." The amount of $12,000 deposited by petitioner each year and withdrawn by Wilfred was included in Wilfred's income tax return for each year as a gift. No income tax returns were filed by or on behalf of the institute. Petitioner included in her gift tax return the amount of $12,000 each taxable year as a charitable gift to the "Art Institute of Light."

Petitioner's first contention is that the so-called "Light Fund" was a fund within the meaning of the statute. This contention appears to be without merit. Any deposit of money in a bank could be called a fund, but we do not believe that Congress intended, by the use of the word "fund" in section 505 (a) (2) (B), to include a mere bank deposit. A bank deposit is not "organized or operated" as the statute requires. These and other words of the statute compel us to hold that the "Light Fund" was not a fund within the meaning of section 505 (a) (2) (B).

Petitioner's second contention is as follows:

Wilfred, in his prior conferences with Mrs. Bolton, by showing her the Statement of Aims and the budget and through correspondence with her found on Pages 19–26 of the Record, became a trustee of these funds, pledging himself to spend them for the purposes of the Art Institute of Light and, except for his personal "salary" as director, for these purposes alone. It was as much of a trust and as truly binding on Wilfred as though an attorney had drawn for them a fifty page indenture.

Under the facts of this case we are of the same opinion as was Wilfred when he filed his income tax returns. He there treated the gifts as gifts to him personally. It seems perfectly obvious that petitioner did not intend to establish a trust. She intended merely to see that Wilfred had sufficient money to enable him to live comfortably and to carry on his work. Since the gift was to an individual and not to a trust or fund, it is not a deductible gift and should have been included as a taxable gift in petitioner's gift tax returns for the taxable years.

The second issue was raised by the amended answer of respondent. He contends that the payments of premiums upon policies of insurance transferred in trust were gifts of future interests. All of the facts relating to this issue were stipulated and briefly are as follows: Petitioner established an irrevocable trust for the benefit of her three sons. The corpus was made up of insurance policies upon the life of petitioner's husband. Petitioner was the beneficiary under these policies and her husband had assigned all of his rights thereunder to her. She in turn assigned all of her rights to the trustee as corpus of the trust for her three sons. In the trust instrument it was stated that petitioner expected and intended to pay premiums during the

life of her husband. During the taxable years she did pay the premiums. The trust instrument provided as follows:

In the event income becomes available before any son reaches the age of twenty-five (25) years, the Trustee is authorized and empowered to pay to or for the benefit of such one until he arrives at such age only so much of the income derived from the share held for such one as it shall deem necessary or proper to provide for his suitable support, maintenance, education and advancement in life, and any income not so expended shall be added to the share from which it is derived. * * *

Respondent contends that these payments of the premiums represented gifts and that they were gifts of future interests. At the hearing petitioner's attorney stated that he did not desire to file a brief upon this issue.

There can be no doubt that the original gift in trust of the insurance policies was a gift of future interests, since the beneficiaries had no rights under the instrument until they reached the age of 25. Prior to that time distribution of the income and of corpus was in the discretion of the trustee. Thus, the gifts of the corpus and income were gifts of future interests. *Alma S. Hay*, 47 B. T. A. 247; cf. *Lillian Seeligson Winterbotham*, 46 B. T. A. 972. Moreover, the gift in trust of the insurance policies was by the terms of the policies a gift of future interests and the payments of premiums thereon by petitioner were therefore gifts of future interests. *Commissioner* v. *Boeing*, 123 Fed. (2d) 86.

*Jack L. Warner*, 42 B. T. A. 954, 957 (reversed on another point in *Commissioner* v. *Warner*, 127 Fed. (2d) 913), holding that payment of premiums on insurance policies constituting corpus of a trust was not a gift of future interests, antedated the decision of the Supreme Court in *United States* v. *Pelzer*, 312 U. S. 399. Respondent's contention that the payments of the premiums were gifts of future interests is sustained.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

————

LEECH, *J.*, concurring: It is apparently conceded that the transfer of the insurance policies by petitioner in 1932 to a trust for the benefit of her three sons was a gift of "future interests" because those interests were, by the trust, "limited to commence in use, possession or enjoyment at some future date or time." Whether the payment by petitioner of the premiums on those policies in 1937 and 1938 were present or "future interests," is our only question. Petitioner undoubtedly could have given the money, with which these premiums were paid, to the children or the trust with the condition that it be so used. But the fact is that she did not do so. She paid the premiums herself. And tax questions, such as this, must be resolved by what

was done, not by what might have been done. *Weiss v. Wiener*, 279 U. S. 333. No obligation to pay these premiums existed. The insurance policies were essentially merely contracts covering a period of one year and containing certain options. By paying the annual premiums for the taxable years, petitioner exercised one of those options and purchased a new contract for each such year. It would seem unanswerable that, since the interests of the children under the original insurance contracts, transferred to the trust, were "future," their interests under the same contracts for the taxable years were likewise "future."

------

BLACK, *J.*, dissenting: I respectfully dissent from the majority opinion, which holds that the $11,093.05 insurance premiums which petitioner paid in 1937 and the $11,144.30 which she paid in 1938 were gifts of future interests. The policies of insurance themselves were irrevocably transferred by petitioner in 1932 to a trust for the benefit of her three sons. We do not have that gift before us, but I am perfectly willing to assume that it was a gift of future interests. That fact seems clear and I shall not attempt to argue otherwise. But the policies, although valuable property, were not self-perpetuating. Somebody had to pay the annual premiums in order that they should remain alive. In each of the taxable years petitioner paid the premiums. The Commissioner by his amended answer affirmatively alleges that in so doing petitioner made gifts to her three sons of the amounts of the premiums so paid and that these gifts were of future interests and no $5,000 exclusions are allowable. It seems clear that gifts were made all right and are taxable, but I am unable to see where such gifts partake in any manner of future interests.

Article 11 of Regulations 79 defines future interests in property as follows:

* * * "Future interests" is a legal term, and includes reversions, remainders, and other interests or estates, whether vested or contingent, and whether or not supported by a particular interest or estate, *which are limited to commence in use, possession or enjoyment at some future date or time.* * * * [Italics supplied.]

I am unable to see where a gift made to pay insurance premiums is limited to commence in use, possession, or enjoyment at some future date or time. It seems to me that it commences right now and its use and enjoyment are immediate.

It is true, of course, that petitioner's three sons did not have the immediate use and enjoyment of the policies themselves or the proceeds thereof and that as to these things the gifts which had been made in a prior year were of future interests, but it is equally true, I think, that so far as the gifts of the money to pay the premiums are concerned there was immediate use and enjoyment.

Suppose, instead of making the payments of the premiums to the insurance companies, petitioner had given her three sons the cash with which to pay them. Could it be contended that the gifts to them of the cash would be gifts of future interests? I don't think so. I can not see where the situation is changed any by the fact that petitioner, instead of giving the money to her sons, paid the premiums directly to the insurance companies, thus making indirect gifts to her three sons. In such a circumstance the trust was not the donee of the gifts. The three sons were the donees of the gifts, and I believe the gifts were no more gifts of future interests than they would have been if she had made them directly to her sons.

It must be conceded, of course, that the court decided in *Commissioner* v. *Boeing*, 123 Fed. (2d) 86, that gifts of the kind here made were of future interests, but, with all due respect to that court, I think that decision was wrong. In the *Boeing* case the court devoted the major part of its opinion to a discussion that the gifts of the policies themselves, which had been made in 1932, were gifts of future interests. Having arrived at that conclusion, the court held as a matter of course and without further discussion that the gifts of the premiums by Boeing in 1936 and 1937 to keep the policies alive were gifts of future interests. It is my view that the problem is not that simple.

For reasons I have stated above, I think that the gifts which petitioner made to her three sons in 1936 and 1937 in the payment of these insurance premiums were gifts of present interests and not future interests, and that the use and enjoyment to the sons were immediate and consisted in the present payment of insurance premiums to keep alive policies of insurance of which they were already the beneficial owners and in which they had very valuable rights which would be lost if the premiums were not paid.

TYSON, *J.*, agrees with this dissent.