**DORA ROBERTS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.**

Docket No. 88. Promulgated September 14, 1943.

*Harry C. Weeks, Esq.,* for the petitioner.
*Donald P. Moyers, Esq.,* for the respondent.

682

**OPINION.**

BLACK, *Judge:* In this proceeding there is no issue as to the amounts of the gifts which petitioner made in the taxable years 1939, 1940, and 1941. The only issue is as to whether the gifts which petitioner made

in the respective taxable years of payments of premiums on certain annuity policies described in our findings of fact were gifts of future interests, as respondent has determined in his deficiency notice, or were gifts of present interests, as the petitioner here contends. This issue also extends to the year 1938, but not because the Commissioner contends for any change in petitioner's gift tax liability as shown by her gift tax return filed for that year. He has determined no deficiency in petitioner's gift tax for the year 1938, but he has determined deficiencies in petitioner's gift taxes for the years 1939, 1940, and 1941, and in this determination he has held that the gifts of the policies in question and the payment of premiums thereon in 1938 were gifts of future interests in property and that he erred in his allowance to petitioner of the exclusions claimed by her on her gift tax return for that year, and that he should now correct same by the allowance of only the proper exclusions for 1938 based on the direct cash gifts which petitioner made in that year in determining the proper amount of net gifts to be carried forward in determining petitioner's gift tax liability for the years which we have before us. This the Commissioner is permitted to do. Cf. *Estate of J. M. Winterbotham*, 46 B. T. A. 972.

The provision of the statute applicable to the three taxable years involved in this proceeding is section 1003, Internal Revenue Code, printed in the margin.[1] A similar provision, section 504 (b), Revenue Act of 1932, is applicable in determining the proper exclusions for the taxable year 1938, which is involved in this proceeding to the limited extent which we have already stated.

The applicable Treasury regulations are Regulations 79, article 11, printed in the margin.[2]

It has been held that where gifts of policies of insurance to a trust for the benefit of named beneficiaries therein were gifts of future interests, then the subsequent gifts by payment of the premiums to keep these policies of insurance in force are also gifts of future in-

---

[1] SEC. 1003. NET GIFTS.

(a) GENERAL DEFINITION.—The term "net gifts" means the total amount of gifts made during the calendar year, less the deductions provided in section 1004.

(b) EXCLUSIONS FROM GIFTS.

*     *     *     *     *     *     *

(2) GIFTS AFTER 1938.—In the case of gifts (other than gifts in trust or of future interests in property) made to any person by the donor during the calendar year 1939 and subsequent calendar years, the first $4.000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year.

[2] ART. 11. *Future interests in property.*—No part of the value of a gift of a future interest may be excluded in determining the total amount of gifts made during the calendar year. "Future interests" is a legal term, and includes reversions, remainders, and other interests or estates, whether vested or contingent, and whether or not supported by a particular interest or estate, which are limited to commence in use, possession, or enjoyment at some future date or time. The term has no reference to such contractual rights as exist in a bond, note (though bearing no interest until maturity), or in a policy of life insurance, the obligations of which are to be discharged by payment in the future. But a future interest or interests in such contractual obligations may be created by the limitations contained in a trust or other instrument of transfer employed in effecting a gift. *   *   *

terests. *Commissioner* v. *Boeing*, 123 Fed. (2d) 86; *Frances P. Bolton*, 1 T. C. 717. Petitioner makes the point in her brief that in both of the cases above cited the gifts were indirectly made through a trust, whereas in the instant case the annuity policies were given outright and there was no intervening trust. This difference will be examined presently in determining whether the gifts by petitioner of the annuity policies in 1938 were gifts of future interests. If we determine that such gifts were of future interests, then we think that the principle decided in *Commissioner* v. *Boeing*, *supra*, and *Frances P. Bolton*, *supra*, namely, that where the gifts of the policies were of future interests the subsequent gifts of premiums to keep such policies alive and in effect were also of future interests, is controlling. So we come to the important inquiry: Were the gifts in 1938 by petitioner to her three grandsons of six annuity policies gifts of future interests? Paul, in his work on Federal Estate and Gift Taxation, sec. 15.11, vol. 2, discusses "Future Interests in Property" and, among other things, says:

The Sixth Circuit has held that beneficiaries of insurance policies transferred in trust are the donees of future interests where their enjoyment of the insurance is dependent upon their survivorship of the grantor. This conclusion is in line with the decision in the *Ryerson* case. Similarly, if insurance is transferred in trust, and the trustee may, in his discretion, surrender the policy for the benefit of the beneficiary, it seems that the beneficiary's interest is "future" rather than "present" because of the contingent character of the beneficiary's right to immediate enjoyment of the surrender value of the insurance.

*On the other hand, the courts would probably hold that a direct beneficiary or assignee of a life insurance policy who may obtain its cash surrender value and exercise the other incidents of ownership has received a present interest.* * * *
[Italics supplied.]

Could the beneficiaries of the annuity policies involved in the instant case surrender them and obtain their cash surrender values and exercise the other incidents of ownership? In all three of the annuity policies issued by the Connecticut Mutual Life Insurance Co. there is contained the following restrictive provision:

Anything in the printed provisions of this Contract to the contrary notwithstanding, no person or persons entitled to exercise the privileges of this Contract shall have the right, power or privilege to change any beneficiary hereunder, withdraw any cash or loan values or dividends prior to December 21, 1948, and after said date only for the purpose of leaving such amounts under Option 2 or Option B or D, under the terms and conditions set forth in such options for the benefit of the Annuitant.

It seems to us that, while possession of the three annuity policies in the Connecticut Mutual Life Insurance Co. doubtless passed immediately to the donees when the gifts of them were made, nevertheless, under the restrictive provisions quoted above, contained in each of

these three policies, their ase and enjoyment within the meaning of article 11 of Regulations 79, quoted *supra*, was postponed to a future date, to wit, at least until December 21, 1948.

The three annuity policies in the Aetna Life Insurance Co. contained the following restrictive provisions:

During the lifetime of the annuitant, the right to receive all cash values, dividends and other benefits accruing hereunder, to exercise all options and privileges described herein, and to agree with the Company to any change in, amendment to, or cancellation of this policy shall vest alone in the life owner (hereinafter so called) designated as follows:

Until the death of Eloise Roberts Canter, mother of the annuitant, said mother shall be the life owner, and after the death of said mother the annuitant shall be the life owner, PROVIDED HOWEVER, that neither said life owner shall have the right to surrender the contract for its cash value except on the following terms and conditions, to wit:

At any time before June 1, 1948 the life owner may elect that the cash value of the contract be payable to the annuitant in accordance with Mode 1, * * *

As we understand the foregoing provision, the three annuitants designated in the three respective policies could not receive the cash surrender values of the policies prior to June 1, 1948, except at the election of the person who had been designated as the life owner of the policy, which in each case was the mother of the annuitant, who was still living during the taxable years. In other words, prior to June 1, 1948, the sole discretion was vested in the mothers of the annuitants to determine whether the annuitants named in the policies should receive the cash surrender value of the policies payable according to mode 1 in the policies. It seems to us that this provision makes the gifts of the policies in 1938 gifts of future interests. Cf. *Helvering* v. *Blair*, 121 Fed. (2d) 945; *Fisher* v. *Commissioner*, 132 Fed. (2d) 383; *Joe J. Perkins*, 1 T. C. 982.

Petitioner, in support of her contention that the gifts of the annuity policy premiums were gifts of present interests and not of future interests, strongly urges the case of *Commissioner* v. *Kempner*, 126 Fed. (2d) 853. We have carefully considered that case, but think that it is distinguishable on its facts. In that case the beneficiaries of the trust had present rights to any and all proceeds of the notes which were later to be collected by the trustees. This fact the court emphasized in its opinion. No such present rights existed in the donees of the annuity policies in the instant case, as we have already endeavored to point out.

We having held above that the gifts of the policies by petitioner to her three grandsons in 1938 were gifts of future interests, it follows under *Commissioner* v. *Boeing*, *supra*, and *Frances P. Bolton*, *supra*, that the gifts of the premiums in the taxable years to keep the policies in force and effect were gifts of future interest. Petitioner is not

entitled to any exclusions by reason of the gifts of these premiums in 1939, 1940, and 1941, nor is she entitled to any such exclusions in 1938 in determining the amount of net gifts to be brought forward from that year to other years. The Commissioner is sustained.

*Decision will be entered for respondent.*